Harvey TABRON, Plaintiff,

v.

Lt. GRACE, et al., Defendants.

Civ. A. No. 1:CV–89–0633.

United States District Court,
M.D. of Pennsylvania.

Dec. 21, 1994.

Harvey Tabron, pro se.

Amy Zapp, Office of the Atty. Gen., Harrisburg, PA, for defendants.

## MEMORANDUM

RAMBO, Chief Judge.

### I. Introduction

Before the court is the September 23, 1994, report and recommendation of the magistrate judge in this matter, and the Plaintiff's objections to the report. The magistrate judge recommended that Plaintiff's motions for appointment of counsel and to compel Defendants' responses to remaining discovery requests be denied, and that Defendants' motion for summary judgment be granted. Plaintiff filed objections to the report on October 11, 1994, and Defendants replied to the objections on October 24, 1994, making the matter ripe for the court's disposition.

### II. Background

The background of this action is set forth in considerable detail in the decision of the Third Circuit Court of Appeals, *Tabron v. Grace*, 6 F.3d 147 (3d Cir.1993), and will be summarized herein only briefly. Plaintiff is an inmate at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI–Huntingdon"). The captioned action arises out of an attack on Plaintiff by a fellow inmate at SCI–Huntingdon. Plaintiff alleges that prison officials witnessed and/or permitted the attack and failed to take appropriate action after the fellow inmate made threats that were overheard by them.

Early in the course of this action, the magistrate judge to whom it had been assigned denied Plaintiff's motion for appointment of counsel. Subsequently, he recommended that certain of the Plaintiff's discovery motions be denied and that the Defendant's summary judgment motion be granted. This court substantially adopted the report and recommendation, ultimately granting summary judgment in favor of Defendants. Upon Plaintiff's appeal, the Third Circuit addressed the appointment of counsel issue, held that the magistrate judge had applied an inappropriate standard, and remanded the matter to this court for disposition in accordance with the appropriate standards, which it set forth for the first time. The Third Circuit declined to address the

summary judgment ruling because if counsel were appointed upon remand, the record was likely to change. This court then remanded the matter back to the magistrate for disposition in accordance with the Third Circuit's directions.

Following remand from this court to the magistrate, Plaintiff renewed his motion for appointment of counsel, and the matter was briefed by the parties. The magistrate judge reviewed the factors set forth by the Third Circuit in the appeal of this matter, *supra*, and, as noted, recommended that Plaintiff's motion for appointment of counsel be denied and that no further discovery was appropriate. Therefore, relying once again upon the record that had developed prior to remand, the magistrate judge recommended that summary judgment be granted in favor of Defendants.

### III. *Discussion*

■ A district court reviews a magistrate's report and recommendations and any objections to it under the standards set forth in 28 U.S.C. § 636(b)(1). The court must conduct a *de novo* review of the report to the extent there are objections, and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Here, the court declines to adopt the magistrate's report and recommendation, primarily because the magistrate judge, in this court's opinion, confused the threshold inquiry into the merits of the claim in determining whether appointment of counsel is appropriate, and ignored the obvious inability of the plaintiff to litigate this claim without assistance of counsel. Furthermore, the course of discovery and resulting record have been so confused in this case that the court would be unable to grant summary judgment in Defendants' favor even if it decided against appointment of counsel.

■ In the appellate decision in this matter, the Third Circuit for the first time instructed district courts as to the set of factors to consider in deciding whether to appoint counsel for an indigent plaintiff. The court emphasized that district courts must consider as a threshold matter whether there is some merit to the plaintiff's claim in fact

and law. *Tabron v. Grace*, 6 F.3d at 155, 158 (citation omitted). Should the Plaintiff satisfy that threshold requirement, the court must go on to consider a variety of other factors. The *Tabron* Court advised that the plaintiff's ability to present his case is a significant factor, which, in turn, compels consideration of the plaintiff's education, literacy, prior work experience, and prior litigation experience. With respect to a prisoner claim, any restraints placed upon the prisoner by the conditions of his confinement must be considered as well, insofar as they would affect his ability to present his case. In conjunction with this, the court should consider the complexity of the underlying legal issues, and should lean in favor of appointment if the legal issues are complex. *Tabron v. Grace*, 6 F.3d at 156.

■ Other important considerations are: (1) whether the case entails a need for factual investigation; (2) the plaintiff's ability to carry out such investigation; (3) the likelihood that a claim will involve substantial discovery and compliance with complex discovery rules; and (4) whether credibility determinations are involved that may require the experience of one trained in the presentation of evidence and cross-examination. *Id.* The district court also may consider any problems that confined individuals may face in litigating their claims. The court's consideration of all of these factors, however, must be tempered by the practical restraints imposed by the scarce supply of attorneys willing to assume responsibility for representation of indigent parties, and the court's inability to require counsel to undertake such representation. *Id.* at 157.

■ Here, in applying the Third Circuit's guidelines, the magistrate judge conducted the threshold inquiry as to the merits of the claim by reference to the Defendant's summary judgment motion. The summary judgment motion, however, was filed only after appointment of counsel had been denied and discovery and the record had deteriorated to its current state. It would appear that a more sound approach, at least in this particular case, would be to consider the merits of the claim as they existed when Plaintiff first

requested appointment of counsel, which was prior to the commencement of any meaningful discovery.

 Turning to the merits, then, it is undisputed that Plaintiff suffered a severe injury at the hands of a fellow inmate. Plaintiff alleged that prior to the attack, one or more Defendants knew of and/or heard the threats against him and that he made known to prison authorities that he was in fear of and in danger from the inmate. Plaintiff further alleged that at least one or more prison officials witnessed the attack and deliberately failed to intervene on his behalf. The case law suggests that there is merit to Plaintiff's claim, whether it is premised upon the due process clause or the Eighth Amendment. The Supreme Court held in *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986), that a prison official's conduct must be more than negligent to support a due process claim based on the failure to protect an inmate from the violence of another inmate. In so holding, however, the Court indicated that a due process violation is implicated where prison officials simply stand by and permit an attack by one prisoner on another. Furthermore, it is clear that the Eighth Amendment applies to conditions of confinement, which, in turn, includes the medical health as well as the physical safety of inmates. *See, e.g., Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1982) (in § 1983 Eighth Amendment claim, Court approved award of punitive damages on theory of reckless or callous disregard of or indifference to the rights or safety of inmate, where prison officials placed known violent inmate in cell with victim inmate who sought protective custody); *Estelle v. Gamble*, 429 U.S. 97, 104–105, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976) (deliberate indifference to seriously ill inmate's need for medical care, evidenced by intentional delay in providing care, constitutes violation of Eighth Amendment).

In *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the Supreme Court clarified the standard of proof that an inmate must meet to establish an Eighth Amendment violation suffered during imprisonment. The Court held that the inmate must prove an objective element—that there existed a sufficiently serious deprivation of the minimal civilized measure of life's necessities, and a subjective element—that a prison official acted with a sufficiently culpable state of mind. The state of mind required is deliberate indifference, a phrase that the *Wilson* Court indicated may acquire different meanings according to the specific conduct complained of and the constraints upon the prison official. *Id.* at 303, 111 S.Ct. at 2326–2327.[1]

In keeping with the Supreme Court's pronouncements, most courts of appeals have recognized that the Eighth Amendment imposes a duty upon prison officials to provide for the physical safety of inmates, including protecting them from each other. *See, e.g., Gibbs v. Franklin*, 18 F.3d 521, 523 (7th Cir.1994); *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir.1993); *Walker v. Norris*, 917 F.2d 1449 (6th Cir.1990). In fact, in *Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir.1992), the Third Circuit Court of Appeals vacated this judge's order granting summary judgment in favor of prison officials on a claim of this nature. The Third Circuit made clear that the court had not applied the proper standards to the inmate's claim that the officials failed to protect him from assaults by other inmates.

In *Young*, the Third Circuit elaborated on the objective/subjective test set forth in the Supreme Court's *Wilson* decision, *supra*. The court held that to satisfy the objective element of an inmate's Eighth Amendment claim based upon inadequate personal security, the inmate must show that there was a "pervasive risk of harm ... from other prisoners...." *Young*, 960 F.2d at 361 (citation omitted). Concerning the subjective element, the *Young* Court explained that the inmate had to show deliberate indifference to the danger, a standard that could be satisfied by a showing that the prison official knew or should have known of the risk. The phrase "should have known," the Third Circuit made

---

1. The *Wilson* Court also recognized that the Eighth Amendment applies to the protection that prisons afford inmates from other inmates. *See id.*, 501 U.S. at 303, 111 S.Ct. at 2326–2327.

clear, is a different and higher standard in this constitutional context than in negligence matters. *Id.* The court also noted that where, as in such claims, a state of mind issue is an essential element of the nonmoving party's case, summary judgment will often be inappropriate because there will be an inherent issue of fact related to credibility. *Young,* 960 F.2d at 360 & n. 21. Finally, the *Young* Court advised that prison officials should, at a minimum, investigate each allegation or threat of violence. *Id.* at 363 & n. 23.

■ The foregoing analysis shows that there is some merit in fact and law to the essential elements of the Plaintiff's claim. Thus, this threshold factor weighs in favor of appointment of counsel. The court now must consider the additional factors pertinent to the appointment of counsel that were identified by the *Tabron* Court. In this case, Plaintiff appears able to read and write reasonably well, a factor the magistrate judge seems to have found compelling in denying appointment of counsel. But there is no question that Plaintiff's lack of legal education, the conflict of his work hours with the prison library hours, and the need for in-depth factual discovery by this incarcerated individual have seriously hampered his ability to represent himself effectively thus far. In this case, these additional factors weigh in favor of appointment of counsel.

Moreover, it is clear that the extent to which the attack on Plaintiff was witnessed and/or tolerated by prison officials involves an inherent issue of fact related to credibility. The record suggests that Defendants admit that certain prison officials witnessed the attack and/or had some knowledge of the tension between the inmates. They deny that any officials had a clear cognizance of any danger to Plaintiff and they dispute the extent to which officials heard threats or deliberately failed to intervene in the attack. The credibility determination required here is pertinent to the prison officials' state of mind, which is a critical element of Plaintiff's claim. The *Tabron* Court's elaboration on the credibility issue suggests that if it is an essential issue in a seemingly meritorious claim, that factor should weigh heavily in favor of appointment of counsel.

■ The application of the *Tabron* factors reveals that appointment of counsel is warranted in this case. Unfortunately, the final consideration mandated by the *Tabron* Court, the scarce supply of attorneys willing to assume responsibility for representation of indigent parties, presents a serious obstacle to successful appointment of counsel. The court has attempted to locate counsel willing to assume responsibility for the case but has been unable to do so thus far. Nevertheless, the court does not believe *Tabron* encourages a decision against appointment of counsel simply because the court must exert considerable effort to locate willing counsel. It is an unfortunate state of affairs that so few attorneys are willing to accept appointment in these matters. This court can only echo the *Tabron* Court's urging that lawyers within this district volunteer for such *pro bono* appointments. For the time, the court will continue to attempt to appoint counsel for Plaintiff, who shall receive notice if and when counsel becomes available for him.

Turning to the Defendants' summary judgment motion, it is apparent from the previous discussion on appointment of counsel that there are disputed issues that will turn on credibility, making summary judgment inappropriate at this point. In addition, the court finds that other factual disputes are impossible to evaluate because of the state of the record with respect to discovery. Accordingly, the court will deny summary judgment to the Defendants who remained in the case as of the time the motion for summary judgment was filed.

The court also will vacate all discovery orders issued thus far in the litigation, and allow a new period during which the parties may seek additional discovery and/or clarification of responses to previous discovery. The commencement of this discovery period will be postponed for a short time while the court continues efforts to locate counsel. Should the court be unable to locate counsel to assist Plaintiff, Plaintiff will be forced to go forward *pro se,* but will have the benefit of the additional discovery period. In the event Plaintiff must litigate his claim himself,

he must pay close attention to the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Pennsylvania, and he must be prompt in notifying the court upon encountering any difficulty with discovery. An appropriate order will be entered.

*ORDER*

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

(1) The court rejects the report and recommendation of the magistrate judge;

(2) Plaintiff's motion for appointment of counsel is **GRANTED;**

(3) The court will attempt to locate counsel to assist Plaintiff in this matter and will notify Plaintiff of the results of this effort on or before January 10, 1994; however, should the court be unable to locate counsel to represent Plaintiff, Plaintiff shall go forward with representation of himself in this matter;

(4) Plaintiff's motion to compel responses to discovery is **MOOT;**

(5) Defendant's motion for summary judgment is **DENIED;**

(6) All previous discovery orders in this matter are **VACATED;**

(7) The period for conducting discovery in this matter shall recommence as of January 17, 1995 and shall remain open until April 21, 1995;

(8) Dispositive motions shall be filed on or before May 22, 1995; and

(9) The court will issue an additional scheduling order concerning pretrial and trial dates at a later time.